No. 162520 and No. 171455, Samuel Kanuthia Gicharu et al. v. Jefferson Sessions May it please the Court, Attorney Joanna Golding, on behalf of Petitioners Mr. Gicharu and Mrs. Kanuthia, I would like to reserve three minutes for rebuttal. No. You may have two. Thank you, Your Honor. Would you pull that mic a little closer to you? Certainly. Is that okay? Yes. At its core, the issue before this Court is a woman's right to be heard on her claims for relief. Now, can we restate this? The question before this Court is whether the BIA abused its discretion in denying an untimely motion to reopen and then your other claim about remanding the case. Yes. All right. So you are in the Court of Appeals. You are not in a trial court. So before the Court, correct, Your Honor, is the right to review the Board's decision below. Ultimately, if that Board's decision is reversed, Mrs. Kanuthia will have the opportunity to have her case heard in court. She had the opportunity a long time ago. So can you address the question before us? Sure. The Court has a legal framework which would be able to allow Mrs. Kanuthia to present on a motion to reopen if petitioners have presented a case showing that they were prejudiced previously and that they have shown due diligence in their efforts to reopen. Now, that assumes we will adopt equitable tolling. Have you dropped the change country conditions? No, Your Honor. I wanted to focus the argument on equitable tolling as that I feel is the most important issue, but I'm certainly happy to address country conditions as well. So initially on an equitable tolling matter, it is important to assess both prejudice and due diligence. The Board erred in finding that petitioners were not prejudiced by actions of prior counsel. Mr. Bichar, a male petitioner, was prejudiced in that prior counsel fundamentally misunderstood his claim for relief. Mrs. Kanuthia was also prejudiced, further prejudiced, in that she was never interviewed by prior counsel regarding harm she suffered. She never testified before the Court, and prior counsel merely submitted a short affidavit and failing to present an application for relief for Mrs. Kanuthia in her own right was prejudice to her. As further evidence of prior counsel's prejudice to petitioners, the very same judge who denied petitioners' claims later granted withholding of removal for their son on similar facts. The Board has erred in finding that this evidence was immaterial to the claims before it. This Court, in a similar case, Tickle Albee Holder, remanded to the Immigration Court for an examination of material evidence of family members' persecution. Finally, I would also draw this Court's attention to Petitioner's motion to supplement the record, which has shown that the Board of Bar Overseers did find that Petitioner's prior counsel was disciplined and sanctioned with suspension of practice for two years. And in other cases, correct? It rather was said to you, if he's already been disciplined, what's the point of adjudicating your petition? That's an accurate description of the letter, but I would also say that they said that there were serious allegations of harm. So inferring and putting all of that together was considered wrong to participate. In addition to clear prejudice, due diligence has been shown. Though the Board characterizes petitioners only to generalize allegations during a 26-month period sought to be told, the following timeline of actions taken by petitioners demonstrates diligence. On March 8, 2013, Petitioner's appeal was denied at the Board. However, it was not until two months later, on May 3, 2013, that they were informed of this denial. This information was conveyed to them via a text message from prior counsel stating that the case was denied but that he had never received a denial decision. Petitioners had worked with prior counsel for 10 years, relying on him exclusively to represent their rights during the course. I'm sorry, I understood he also told them how they could get a copy of the decision. He said he would attempt to get a copy of the decision. Would you answer my question? I believe he said that he would attempt to get a copy of the decision and that they could call, he could contact the Board and that they could call the 1-800 number. They could call the 1-800 number? The 1-800 number would merely tell them that the case was denied. They turned to him to continue to ask for assistance. Did they say they called the 1-800 number? They did not, Your Honor, but the 1-800 number would merely tell them the same information. They continued to rely on their attorney for his advice and guidance as they respected him and wanted him to continue to help on the case. Well, how many months went by after all this happened before they decided that perhaps they needed to look into it further? There were quite a few months aside. It was 26 months. 26 months. How does that show diligence? So the course of their actions, I would argue, do show diligence. So after learning of this decision, they attempted to obtain a copy of additional evidence from prior counsel, attempted to meet with him to discuss their options. They contacted him by text message, by phone calls. They chased him around the city, attempting to meet with him at various office locations and meeting points. In January of 2014, they met with me twice as they were frustrated in their efforts to obtain a complete copy of their file. Following my advice to continue to aggressively follow up with prior counsel to obtain a copy of their file in order to prepare the strongest motion to reopen based on a full review of proceedings below. As recognized by this court and the Supreme Court, the area of immigration law is a complex, demanding area of law. Given this, it was essential that the entire record be obtained. After a formal request of their file, eight months later, in August of 2014, petitioners finally obtained an incomplete copy of their file from prior counsel. Upon immediate review of the file, it was apparent the case contained misstatements of fact. Therefore, a FOIA request was immediately made on September 10, 2014. In March of 2015, the request returned a very small fraction of records, 38 pages. Petitioners should not be held responsible for delay on the part of the government who failed to release records in a timely manner according to law in 10 days. Despite all of these efforts, petitioners were detrimentally affected both by prior counsel and by the government. Petitioners were between a rock and a hard place. Petitioners are forced to choose between rushing to timely file or expeditiously file a motion to reopen that may not present sufficient basis for multiple claims of relief or risk delay in filing beyond the statutory deadline. Understanding this dilemma, the equitable remedy must be made available to petitioners. Unless the court rewards petitioners who pursue thorough and proper motions to reopen, the court will continue to incentivize ineffective lawyering. Petitioners were ultimately forced to prematurely file the instant motion in August of 2015 when the Stricker trial was detained, creating an emergent and dire situation. Petitioners then supplemented and provided a voluminous record which documents the complexity of their claim below, the necessity of reviewing that record, and persistent pursuit of relief. In addition, the court must look beyond a mere timeline. An equitable tolling looks beyond a timeline. And you must consider specific facts of a case. I would also highlight to the court in this circumstance that Mrs. Canuthia has presented evidence of an extraordinary circumstance of post-traumatic stress disorder related to her persecution. Finish. Finish your sentence. Related to her persecution, which could be an extraordinary circumstance that this court should consider. Thank you. Thank you. You still have two minutes to go later. Yes. Thank you. Good morning. I please the court, Jan Redfern, for responding to the Attorney General. In this case, the petitioners failed to meet their heavy burden of demonstrating that the board abuses discretion in denying their two late motions to reopen, and their motion to reconsider, the first motion, denial of the first motion to reopen. They failed to demonstrate both change, materially changed country conditions, or that they wanted equitable tolling of the following deadline to file their motions to reopen. Now it appears that petitioners waive or have abandoned their argument of changed country conditions. No, she, no, she had, she just said she hadn't abandoned it, but she wanted to focus an oral argument on the equitable tolling. Understood, Your Honor. Then the respondent continues to argue that the board reasonably found no changed country conditions between the 2011 hearing and their motion to reopen filed in 2015, and 2016, and 2017 as the second motion to reopen. For changed country conditions, this court has held that a petitioner has to make a convincing demonstration of intensification, not just mere deterioration, or not just mere continuation of conditions in a country, but a deterioration, intensification, not just persistence of negative conditions. She has spent her entire argument on equitable tolling. Perhaps you could turn to that. Yes, Your Honor. So for equitable tolling, this court has held, first of all, it's a very, it's a sparingly invoked doctrine. It's for rare, it's a rare remedy for unusual circumstances. And in this case, the court should find that petitioners fail to establish that they exercise due diligence in pursuing their claims. This court in Neves held that a petitioner must diligently pursue the rights for the entire time they seek to be told. So here, due diligence, the petitioners had to show due diligence from June 6, 2016, which was the expiration of the 90 days they had to file a motion to reopen before the board, and 8-24-2015, which is the date of the filing of their motion to reopen. Now, petitioners were aware of the board decision no later than May 2, 2013. In their affidavits, they state only that they followed up with their prior attorney regularly until they hired current counsel in January of 2014. But other than showing that they made one trip to current counsel's office in January 2014, they didn't specify any details regarding the dates, the frequency of contact with their prior counsel, or what they did when they were unable to reach him. And in Neves, this court specifically held in a similar situation that consistently contacting prior counsel is not enough. It's insufficient to demonstrate due diligence without specific details, dates, and frequency of contact with prior counsel. Also, the petitioners here don't give any details between hiring their current counsel in January 2014 and filing their motion to reopen in August of 2015, except for stating that they were waiting for their file from their prior attorney. Well, she put it more graphically. We're caught between a rock and a hard place. In filing a motion to reopen, she says she wanted to present the best case possible, and that required a review of the entire file, and she had a hard time getting that file. So respond to that. Well, that's understandable, Your Honor. But what this court has required is that a petitioner provide specific details of due diligence instead of what happened here, apparently, was that counsel, current counsel, was hired in January 2014 and requested a file from petitioner's prior counsel, but then waited eight months until August of 2014 before filing a FOIA request, so it's unclear what steps, if any, petitioners were taking during that time to pursue their immigration case. Additionally, petitioners have to... and saying, look, we're looking for the rest of the information we don't have and to be able to add the information when it becomes available? Well, petitioners can certainly request the board to hold the case open while they're waiting for supplemental evidence and then file that evidence before the board renders a decision. And so you can flesh out your petition? Yes, Your Honor. So in this case, petitioners didn't do that. Instead, they chose to wait... I assume there is a regulation that says that. Do you have the citation? I don't have it off the top of my head, No, Your Honor. I can certainly provide it to the court after argument if the court wishes. Yes, do, please. Give her 10 days. In addition, petitioners must also show due diligence, prejudice resulting from their prior counsel's representation. And here, for the reasons set forth in the government's brief, the petitioners failed to establish prejudice from their prior counsel. Am I correct that prior counsel, having been told of the newly emergent claims of the wife, immediately then filed something with the immigration judge? The prior attorney? Yes. No, I don't believe he's filed anything with the immigration judge since the petitioner's motion to reopen and remand that he filed with the board along with the appeal, no. Okay. So getting back to the prejudice for petitioners, it comes down to one thing. The petitioners failed to demonstrate in their underlying proceedings that the government was unable or unwilling to control the faction that they feared. And because of that, petitioners' claims that if the female petitioner had testified before the court, if she had been able to present her claim of FGM before the court, and if the female petitioner had submitted evidence before the court, that that would have changed the underlying denial of asylum and withholding of removal. If there are no further questions, the respondent requests that, given the interest of finality of removal proceedings here, and the fact that the petitioner's motion to reopen is disfavored, especially because it is late, the respondent would request that the court deny the petitions for review. Okay. We've asked you to provide us with a citation to the regulation or statute, if the statute says it. Yes, Your Honor. You will do that within 10 days. Yes, Your Honor. Just provide the citation, no argumentation on it. Am I able to provide a case law if I find that as well? A standard Rule 28J letter. Yes, Your Honor. Okay. Thank you. First of all, in response to the Neves case before this court, I would argue that the Neves case, in fact, supports petitioner's claim, and that petitioners have shown more than Neves did in his case. Petitioners have shown specific facts of reaching out to prior counsel, but in addition have shown specific actions that they took in the form of requesting the record from him and in the form of requesting the FOIA from the government. In that they were unable to obtain these records, they were further prejudiced by the ineffective assistance of prior counsel. Since your counsel has pointed out that equitable tolling should be a rare remedy in unusual circumstances, I would present to the court that you should hold that this case is such a rare circumstance and that it is distinguishable clearly from the Neves case and presents a clear extraordinary circumstance, coupled both by the ineffective assistance which caused the significant delay in this case and by the particular circumstances of the petitioner in this case. In response to the Skelton petition, I would argue, as I have... I'm sorry. Your ineffective assistance claim is both that he didn't, prior counsel did not interview the wife separately and that once the BIA ruled, he had continuing obligations to them to provide them with the opinion and the case file. Is that it? Yes. Okay. And I think also, Your Honor, you had asked a question about the prior record and what he had supplemented. I want to clarify, he did supplement when he learned of female petitioners' claim for relief. He merely supplemented with a very simple affidavit. This was not sufficient. He should have presented her application in full and she should have the opportunity on remand to present that case to the court due to the ineffective assistance of counsel. Yeah, I thought I read the record that he had in fact... It's a very important point. I did want to clarify that, Your Honor. Okay. Thank you. Thank you.